**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

CATHERINE JOHNSON

Plaintiff,

v.

SCHOOL DISTRICT 158,

Defendant.

Case No. 3:21-cv-50213

Honorable Iain D. Johnston

**MEMORANDUM OPINION AND ORDER**

On May 25, 2021, Plaintiff Catherine Johnson sued Defendant Huntley Community School District 158 for allegedly discriminating against her because she claimed to be disabled. Compl., Dkt. 1, at 3–4. Plaintiff alleges that: (1) Defendant terminated her employment after filing a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"); (2) she was "fired for seeking medical treatment"; and (3), Defendant failed to stop workplace harassment. *See id.* at 4–5. Defendant now moves for summary judgment. Dkt. 42. For the following reasons, the Court grants Defendant's Motion for Summary Judgment. *Id.*

**BACKGROUND**

Before setting out the background facts, first a word about their origin. "On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). Local Rule 56.1 requires a party seeking

summary judgment to file an accompanying statement of facts, with numbered paragraphs and citations to the record supporting those facts. See LR 56.1(d). "Factual allegations not properly supported by citation to the record are nullities." *Bolden v. Dart*, No. 11 C 8661, 2013 U.S. Dist. LEXIS 102397, at \*5 (N.D. Ill. Jul. 23, 2013) (internal quotations and citation omitted).

The party opposing summary judgment must "admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." LR 56.1(e)(2).

To dispute a fact, the party opposing summary judgment must, in its response, "cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." See LR 56.1(e)(3). The Court may disregard assertions that are unsupported by the cited evidence. *Gunty v. Exelon Nuclear Sec.*, 14 C 4756, 2017 WL 1386175, at \*2 (N.D. Ill. Apr. 18, 2017). The opposing party's response "may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." LR 56.1(e)(2). To assert new facts, the opposing party must file its own statement of facts. LR 56.1(b)(3). Facts not otherwise included in the statement of facts may be ignored. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 810 (7th Cir. 2005). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *See* LR 56.1(e)(3). The Court is entitled to expect strict compliance, even from pro se litigants. *See Coleman v. Goodwill Industries of SE. Wisc., Inc.*, 423 Fed. Appx. 642, 643 (7th Cir. 2011); *Cracco v. Vitran Exp. Inc.*, 559 F.3d 625, 632 (7th Cir.

2009); *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 733 (7th Cir. 2005); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

The Court explained this entire procedure to Plaintiff during the pre-filing conference. Dkt. 41. So, Plaintiff knew what was required.

Defendant filed a Statement of Material Facts ("DSF") under to LR 56.1 Dkt. 43. Plaintiff filed a Statement of Additional Facts ("PSF") and a Response to Defendant's Statement of Material Facts ("RSF"). Dkts. 49, 51. PSF simply lists 11 appendices with no explanations as to which facts they support.[1] Dkt. 51. Thus, the Court will disregard PSF and adopt DSF to the extent it is not properly controverted by Plaintiff's response citing "specific evidentiary material that controverts the fact" along with a concise explanation as to "how the cited material controverts the asserted fact." *See* LR 56.1(e)(3); *Cichon*, 401 F.3d at 810.

Plaintiff was a teacher for Defendant. DSF ¶ 6–8. In February 2017, Plaintiff's immediate supervisor was Jessica Lombard. *Id.* at ¶ 10. On several occasions, Mrs. Lombard informed Adam Zehr, Defendant's Assistant Superintendent for Human Resources, that Plaintiff was sending her text messages about Mrs. Lombard and her family that Mrs. Lombard "found inappropriate." *Id.* at ¶¶ 9, 11.

On February 10, 2017, Plaintiff allegedly sent Mrs. Lombard additional "inappropriate" messages. *Id.* at ¶ 13. Mrs. Lombard showed the messages to Mr. Zehr. *Id.*

---

[1] The appendices themselves are attached as exhibits to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. Dkt. 50.

That same day, Mr. Zehr emailed Plaintiff, instructing her to come to a meeting at his office. *Id.* at ¶ 14. Plaintiff "did not show up for the meeting." *Id.*

Instead, Plaintiff emailed Mr. Zehr, explaining that she was at the police station and filing a report with the Sycamore Police Department "about something that happened at an employees [sic] house when she invited me there to hang out." *Id.* at ¶¶ 15, 16. She went on to explain that the "police are working on it," and asked Mr. Zehr not to "share this with anyone." *Id.* She further explained that she had been "so sick about this happening," that she required an IV at the hospital. *Id.* After the IV, she was going to continue working with the police. *Id.*

Later that night, Mr. Zehr spoke with "Ryan" at the Sycamore Police Department and was told that Plaintiff reported that while at Mrs. Lombard's home in November 2016—three months earlier—Plaintiff was drugged and sexually assaulted by Mrs. Lombard's husband. DSF ¶ 17. The Court has no information as to whether Mrs. Lombard's husband has any employment relationship with Defendant. Plaintiff did not present any admissible evidence that he did. Ryan also explained that, due to Plaintiff's apparent mental state, the police were unable to make a report. *Id.*

Shortly thereafter, Defendant "commenced an investigation, which consisted of (1) a comprehensive review by Mr. Zehr of Plaintiff's employee file which Defendant maintained; and (2) a formal interview with Plaintiff which took place on February 15, 2017[,] that was attended by, among other[s], Mr. Zehr." *Id.* at ¶ 20. On February 16, 2017, Defendant's superintendent informed Plaintiff that Defendant was placing

her on paid administrative leave while it investigated Plaintiff's allegations. *Id.* at ¶ 23.

A few weeks later, in March, Plaintiff retained the Patterson Law Firm to represent her "regarding Defendant's treatment of her allegations against Mrs. Lombard and her husband and subsequent decision to place her on administrative leave." *Id.* at ¶ 26. Kristi Browne and Peter Evans were, respectively, the partner and associate responsible for representing Plaintiff. *Id.*

On June 6, 2017, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant. *Id.* at ¶ 27.

According to Defendant, from August 24, 2017, to September 6, 2017, the parties negotiated a settlement agreement via email. *See id.* at ¶¶ 28–39. The negotiations culminated in a "Separation Agreement," under which, in relevant part, "(1) Plaintiff agreed to withdraw the 2017 Charge and voluntarily resign with an effective date on the earlier of (a) Plaintiff obtaining alternative employment or (b) December 31, 2017; and (2) Defendant agreed to keep Plaintiff on paid administrative leave and pay Plaintiff her regular salary and benefits until her resignation became effective." *Id.* at ¶ 45. In consideration, Plaintiff also was required to release the "Board, its board members, employees, and agents" from claims Plaintiff had or might have had against them arising under the ADA, Title VII, the Rehabilitation Act, and other specified state and federal laws. *See* DSF at 27–28.

Defendant contends that on September 6, 2017, Plaintiff signed the Separation Agreement. *See* DSF ¶ 39. Defendant cites Mr. Evans' September 6, 2021, email to

Defendant's counsel stating "She signed today. I will scan and email to you and put two copies in the mail." *Id.* Defendant also cites Mr. Evans' affidavit, in which he explains that he "would not have told [Defendant's counsel] that Plaintiff signed the Separation Agreement unless he knew that Plaintiff had in fact signed the Separation Agreement." *Id.*

Defendant goes on to explain that "[a]fter entering into the Separation Agreement, Plaintiff voluntarily resigned her employment with Defendant," effective on December 31, 2017. *Id.* at ¶ 48. Through Mr. Evans, Plaintiff also withdrew her Charge with the EEOC. *Id.* at ¶ 47.

Plaintiff, unsurprisingly, disputes this series of events from soup to nuts. Surprisingly, however, she even goes so far as to assert that she did not execute the Separation Agreement. *See* RSF ¶¶ 29–45. She circuitously asserts that she did not sign the document:

> Plaintiff, Catherine Johnson was not included in any emails from the dates mentioned between [Defendant's Counsel] and Peter Evans. Catherine Johnson is unaware of who signed her name to the document that [Defendant's Counsel] and Peter Evans are discussing in these emails that is labeled as a separation agreement. The separation agreement that is being discussed is unsigned and undated at the signature line. Plaintiff, Catherine Johnson, remains employed by School District 158 and is on disability.

*Id.*

She relies on three appendices to support her position: F, G, and H. *Id.* Appendix F is the Separation Agreement, dated September 6, 2017, with a signature purporting to be "Catherine Johnson" above a signature line with the name "Catherine Johnson" below it. Dkt. 50-1, at 21. Appendix G is an affidavit by Plaintiff.

*Id.* at 22. It is dated August 16, 2022, which happens to be eight days after Defendant moved for summary judgment, and three days before Plaintiff filed her response. *Id.* In Appendix G, Plaintiff states that she did not meet with Defendant's counsel, Mr. Evans, or Defendant's board president "regarding a Separation Agreement." *Id.* She also asserts that she "did not sign or date the Separation Agreement," that she is "currently employed" by Defendant and is on disability, and that Defendant is refusing to let her work and that she is therefore forced to remain on disability. *Id.* Appendix H is a February 16, 2017, letter from Defendant's superintendent to Plaintiff informing her that she is being placed on administrative leave during the period of investigation. *Id.* at 23.

It is undisputed that between the execution of the Separation Agreement and December 31, 2017, Plaintiff was paid her salary as required by the terms of the Separation Agreement. After December 31, 2017, Plaintiff was no longer paid her salary—again consistent with the terms of the Separation Agreement.[2]

Communications between Plaintiff, Defendant, and other school officials stalled after December 31, 2017. *See* Compl., Dkt.1; DSF; RSF. Then, seemingly out of the blue, on January 27, 2021, Plaintiff emailed Scott Iddings, another employee of Defendant, stating, in part, that she had been "raped by several colleagues in November of 2016" and that she had been "illegally fired for reporting." DSF ¶ 55. She went on to explain that she "heard that the school district gave [her] a payout check but never called [her] to pick it up, instead it was being passed around to

---

[2] Plaintiff admitted to these facts under oath at a Rule 43 evidentiary hearing.

different people." *Id.* This email was forwarded to Mr. Zehr, who, on January 28, 2021, emailed Plaintiff explaining Defendant's position:

> School representatives do not agree with the statements in your email. With regard to an alleged 'payout', you were not 'illegally fired' by the school district. Instead, you entered into a Separation Agreement with the District on September 6, 2017 in which you agreed to resign. A copy of that Separation Agreement is attached. As you can see, the Separation Agreement provided for continued pay following execution of the Separation Agreement through your last day of employment which was December 31, 2017. All required payments were made by the District by direct deposit from September – December, 2017.

*Id.* at ¶ 56.

On April 13, 2021, Plaintiff filed her second Charge with the EEOC against Defendant. *Id.* at ¶ 57. The Charge alleges that Defendant "discharged" Plaintiff after she filed her first EEOC Charge, and listed January 28, 2021, as the only date that discrimination occurred. *Id.* She also alleged that she had been discriminated against based on her disability. Compl., Dkt. 1, at 7.

The next month, Plaintiff filed this lawsuit against Defendant. *See generally* Compl., Dkt. 1. According to the Complaint, the unlawful behavior occurred on or around January 21, 2021. Compl., Dkt. 1 at 2. Plaintiff alleges that Defendant terminated Plaintiff's employment after filing a Charge with the EEOC. *Id.* at 5. She also alleges that on January 28, 2021, she received an email stating that she was "fired for seeking medical treatment," and that Defendant failed to stop workplace harassment. *See id.* at 4–5. Plaintiff brings her claims under the ADA or the Rehabilitation Act. *Id.* at 3–4.

So, the recap this four-year saga is summarized as follows:

- 2/10/17: Mrs. Lombard shows Mr. Zehr text messages from Plaintiff; Mr. Zehr asks Plaintiff to meet with him; Plaintiff explains via email that she is filing a police report; Mr. Zehr speaks with police department.
- 2/16/17: Plaintiff placed on paid administrative leave.
- 6/6/2017: Plaintiff files first EEOC Charge, which is later withdrawn.
- 8/24/17: According to Defendant, settlement negotiations start.
- 9/6/17: According to Defendant, Plaintiff signs Separation Agreement.
- 12/31/17: According to Defendant, Plaintiff resigns employment.
- 9/6/17 – 12/31/17: Defendant pays Plaintiff her salary, consistent with the terms of the Separation Agreement.
- 12/31/17: Defendant stops paying Plaintiff her salary, consistent with the terms of the Separation Agreement.
- 1/27/21: Plaintiff emails Mr. Iddings; email is forwarded to Mr. Zehr.
- 1/28/21: Mr. Zehr responds to Plaintiff.
- 4/13/21: Plaintiff files second EEOC Charge, alleging that she was discharged for filing her first EEOC Charge; alleges unlawful retaliation and discrimination occurring on January 28, 2021—the date of Mr. Zehr's response.
- 5/25/21: Plaintiff files lawsuit against Defendant.

Defendant now moves for summary judgment on the grounds that Plaintiff's claims are untimely, that her claims are barred by the Separation Agreement, and that her claims fail as a matter of fact and law. *See* Dkts. 42, 44.

Given the peculiar circumstances and allegations in this case, the Court held an evidentiary hearing on Defendant's Motion. Dkt. 56. Despite plenty of question-worthy fodder, the hearing bore no fruits, except that Plaintiff admitted to receiving payments consistent with the Separation Agreement and that she no longer received her salary after December 31, 2017, which is also consistent with the Separation Agreement.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if, when viewing the record and all reasonable inferences drawn from it in the light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The initial burden to show that no genuine dispute of material fact exists falls on the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Beardsall*, 953 F.3d at 972. If the movant meets this burden, to survive summary judgment, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. "Speculation is insufficient to withstand summary judgment." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996). Indeed, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material fact. *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## ANALYSIS

Plaintiff claims that Defendant's allegedly unlawful actions occurred in January 2021. *See* Compl., Dkt. 1, at 2, 7. The only event to have allegedly occurred during that time was the email correspondence on January 27 and 28, 2021, between Plaintiff, Mr. Iddings, and Mr. Zehr. *See* DSF; RSF. Indeed, neither Plaintiff nor Defendant allege contact involving Plaintiff, Defendant or school officials between December 31, 2017, and January 27, 2021, which is more than three years. *Id.*

So, here's the rub: if Plaintiff's claims center on the email exchange in January 2021, her claims fail as a matter of law. If Plaintiff's claims center on the events occurring in 2017, Plaintiff's claims are untimely. In either event, the outcome is the same: Defendant is entitled to judgement as a matter of law.

I.      Plaintiff's claims fail as a matter of fact and law.

Plaintiff alleges that Defendant violated her rights under the ADA or Rehabilitation Act when they terminated her employment and failed to stop harassment. Compl., Dkt. 1, at 3–4. She explains, "I was discharged after filing with the EEOC. The reason I filed is because I was told to no longer report to work and that they would pay me for 1 year. On 1-28-21 I received an email from the school district stating I was fired for seeking medical treatment." *Id.* at 5. Plaintiff admits that the subject of her Complaint is the January 28, 2021, email from Mr. Zehr. *See* DSF ¶ 60 ("The email to which Plaintiff referred . . . in her Complaint was Mr. Zehr's January 28, 2021, email he sent to Plaintiff in response to her email to Mr. Iddings."); RSF ¶ 60 ("Admitted").

Under the ADA or the Rehabilitation Act, a plaintiff can only prevail if the plaintiff proves an adverse employment action. *Anderson v. Donahoe*, 699 F.3d 989, 994–95 (7th Cir. 2012); *Dickerson v. Bd. Of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).  No doubt, the Seventh Circuit broadly defines "adverse employment action." *Arizanouska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012). But there are still limits.  *Porter v. City of Chicago*, 700 F.3d 944,

11

954 (7th Cir. 2012) (not every action an employee is unhappy about is an adverse employment action).

No reasonable juror could conclude that Plaintiff faced an adverse employment action on January 28, 2021. The only event to have allegedly occurred on January 28, 2021, was Mr. Zehr responding to Plaintiff with an explanation of the events that allegedly occurred in 2017. DSF; RSF. Mr. Zehr explains that Plaintiff was not "illegally fired." DSF ¶ 56. Rather, he continues, she "entered into a Separation Agreement" in which she agreed to resign. *Id.* Mr. Zehr attached the Separation Agreement and explained that "[a]s you can see, the Separation Agreement provided for continued pay following execution of the Separation Agreement through your last day of employment which was December 31, 2017." *Id.* Mr. Zehr concluded by noting that all required payments were paid via direct deposit. *Id.*

The email does not state that she "was fired for seeking medical treatment" Compl., Dkt. 1, at 5; DSF ¶¶ 56, 60; RSF ¶ 60. Nor does it even state that she was fired. *Id.* The email does not convey any new information. It simply points her to what was already stated in the Separation Agreement. No employment action of any sort— let alone an adverse employment action—occurred on January 28, 2021. *See Arizanouska*, 682 F.3d at 704 (identifying three types of actions that amount to adverse employment action). Thus, her retaliation claim fails as a matter of law. *Dickerson*, 657 F.3d at 601.

Plaintiff's claim for failure to stop harassment suffers the same fate. Harassment is actionable if it is "sufficiently severe or pervasive to alter the terms

and conditions of employment." *Cole v. Bd. Of Trustees of N. Ill. Univ.*, 838 F.3d 888, 895 (7th Cir. 2019); *see Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 839, 856 (7th Cir. 2019). A plaintiff must show "(1) the environment was both subjectively and objectively offensive; (2) the harassment [the plaintiff] suffered was based on [the plaintiff's] membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Malas v. Hinsdale Twp. Dist. No. 86*, No. 15-CV-10490, 2022 WL 1499905, at *7 (N.D. Ill. May 10, 2022). The Court considers "'the totality of circumstances, examining factors such as: 'the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance.'" *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (quoting *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)).

The events that occurred on January 28, 2021, are legally benign. Indeed, no reasonable juror could find that the one email sent from Mr. Zehr to Plaintiff was physically threatening, humiliating, or otherwise unreasonably interfered with her work. *See Abrego*, 907 F.3d at 1015. Again, the email simply restated Defendant's position regarding the 2017 dispute. Thus, Plaintiff's harassment claim fails as a matter of law.

II.     If Plaintiff's claims rest on the events occurring in 2017, her claims are untimely.

To be sure, Plaintiff's Complaint cannot rest on the events occurring in 2017 because they would be untimely. To bring a claim under the ADA or Rehabilitation Act, an employee must file an EEOC charge within 300 days of the alleged unlawful

13

employment practice. *McHale v. McDonough*, 41 F.4th 866, 869 (7th Cir. 2022); *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). Thus, if Plaintiff wished to litigate alleged acts of discrimination occurring in 2017, that ship has long sailed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [42] is granted. This civil case is terminated.

Date: January 23, 2023

                                                                  _____
                                                       Honorable Iain D. Johnston
                                                  United States District Judge